Per Curiam.
The bill of exceptions states that the defendants, in the Circuit Court of Wilson County, gave in evidence a grant from the State of North Carolina, dated the 15th of September, 1787, to one of the defendants, and a deed from him to the other. The grant of the plaintiff was dated the 28th of March, 1810, and expressed on its face to be founded on an entry made the 23d of September, 1785, on a military warrant, No. 2,420, dated the 30th of September, 1795. The plaintiff offered a copy of this entry in *593 evidence. The defendant objected, and in support of the objection offered a certified copy of the warrant, of a date subsequent to that of the entry. The objection Avas overruled, and a copy of the entry read. The defendant then offered in evidence a copy of the warrant on which the defendant’s grant issued, certified by the register of West Tennessee, * together with the assignments indorsed thereon. The warrant is No. 2,420, for 640 acres of land, issued to the heirs of Donald Gauler, and dated the 30th of September, 1785. On the back is indorsed an assignment to Thomas Butcher by John Gauler, heir, dated the 3d of October, 1785 ; also an assignment from Butcher to Thomas Smith, and from Smith to Martin Armstrong, the two last without date. Also, he offered to read in evidence a copy of another entry made on the same warrant by Martin Armstrong and Crutcher, for other lands, dated the 28th of February, 1786, all which were offered with intent to prove that the plaintiff’s grant ought not to relate back to the date of the entry produced by him, and that the entry had been virtually removed. The court refused to receive the offered testimony. To this decision and opinion of the court the defendant’s counsel excepted. There was a verdict and judgment for the plaintiff, which the defendant now insists ought to be reversed.
It seems as if the prediction of a late learned judge of this court[1] will ere long be verified, who often told us, that, by going back to the entry, we should become entangled in difficulties not easily to be escaped from, upon principle.
After going back to the entry, Ave are noAV required to go back to the warrant, and, by comparing it with the entry, to discover that the latter was made after the former; and, indeed, the Avarrant show's it, for the number of the Avarrant is recited on the entry, and the warrant itself bears date after the entry. Hence it follow's, that if the date of the warrant be not mistaken, the entry was made at some time after the 30th of September, 1785, though it bears date a feAV days before, but at what time after is wholly uncertain. And then the title by the grant commences from its date. It may be, however, that the date of the Avarrant is mistaken. * Then, it not being proved in which the mistake was, it is still uncertain what is the date of the entry, and in such *594 case the grant cannot relate.- The date of the warrant was not deemed material by the act of 1784, ch. 15, for by that act the military entry book is to state the number of the warrant, but not the date. There is, however, a date, and that evinces a probable mistake in the date of the entry, exciting reluctance to the postponement of a prior grant, by the relation of a later one to such entry. In this instance, the probability is that the entry was after the date of the warrant, for the secretary’s book would show the true day; and if anterior to that in the warrant, why not produce it to support the entry ? It is not'as complete an answer as could be wished, to say the court would not receive it, and therefore it,was not produced. Now shall we go back to the warrant or not ? Or rather, shall we restrict ourselves to the bounds which former decisions have not. transcended ? Former decisions have uniformly determined that courts of law will go no further back in ejectment. Should we go back, it would not be for the supposed purpose of inquiring into the consideration, namely, whether the warrant accompanied the location into the office when the entry was made; for the surveyor-general is bound to produce one for every entry, in accounting with the government. But it would be for the purpose of ascertaining that the entry was not dated when it purports to have been, and thus to avoid the postponement of the first grant. No doubt the warrant referred to accompanied the entry. It cannot be denied; but the question is, when did it accompany the entry ? Most certainly not till after the date of the latter; and then the priority of the entry to the grant of the defendant is wholly conjectural.
Should it appear upon a bill in equity that the entry, which is the equity related to, did not really .exist, in other words, that the entry was not really made * when it purports to bear date, then that equity would be laid aside, and each grant take effect from the date. The bill would then lie, and the . evidence of the warrant be there receivable, because the fact, though material, could not be inquired into here. It is better, perhaps, that the controversy be left upon this ground, than to innovate in a case where a new precedent would not produce any great public advantage. By doing so in this instance, however, the refusal to innovate will beget an innovation; for the grantee on the elder grant will be forced into equity, to remove the equity to which the *595 latter grant relates, and thus to take from the latter grant its precedence.
To abide by precedents has been of late often recommended to us, and we ought once for all to reply, whenever we find modern decisions divei’ging from ancient principles, we shall, as the English judges lately did, who succeeded one of the greatest men that ever lived, prune away the excrescences of exuberant talents in order to return in such instances to the neat simplicity of ancient times.

Affirm the judgment of the Circuit Court.

See Clinton v. M'Clarin, 3 Hay. 288, and note sub fin.; King’s Digest, 5468 5952, 7862, 7868, 7878.

 Judge Overton.